IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAGEBRUSH HEALTH SERVICES, a Nevada nonprofit foundation 8379 West Sunset Road, Suite 210 Las Vegas, Nevada 89113<br><br>Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity, and the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, 200 Independence Avenue, S.W. Washington, DC 20201,<br><br>and<br><br>CAROLE JOHNSON, in her official capacity, and the HEALTH RESOURCES AND SERVICES ADMINISTRATION, 5600 Fishers Lane Rockville, MD 20857<br><br>Defendants. | Civil Action No. |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Civil Rules 7 and 65.1, Plaintiff Sagebrush Health Services ("Sagebrush" or "Plaintiff") respectfully submits this Memorandum of Points and Authorities in Support of its Motion for a Temporary Restraining Order.

1

**PRELIMINARY STATEMENT**

This case requires the Court's urgent attention to stave off profound irreparable harm to Sagebrush, directly caused by Defendant Health Resources and Services Administration's ("HRSA") arbitrary and capricious departure from statutory requirements and its own internal processes. Sagebrush, an entity that provides substantial support to the communities it serves, relies almost entirely on savings realized from its participation in the federal 340B Program and will be forced to close its doors within a matter of days absent preliminary relief in this matter.

To prevent HRSA's unlawful actions from causing irreparable harm to Sagebrush, the Court should enter preliminary relief to maintain the status quo. HRSA is empowered by statute to audit covered entities and, after notice and hearing, impose sanctions. *See* 42 U.S.C. § 256b HRSA's decision to terminate Sagebrush's participation in the 340B Program, absent the requisite notice and hearing, is contrary to statute and a violation of Sagebrush's due process rights under the Fifth Amendment to the United States Constitution.

**BACKGROUND**

**A. The 340B Program**

The 340B Program is a federal drug discount program that allows certain types of health care providers and organizations, referred to as "covered entities," to purchase from participating manufacturers outpatient drugs for provision to their patients at substantially reduced prices. *See* 42 U.S.C. § 256b.

Sagebrush is qualified to participate in the 340B Program as an "entity receiving funds . . . . through a State or unit of local government" under Section 318 of the Public Health Service Act ("PHSA") "relating to treatment of sexually transmitted diseases" (a "Section 318 subawardee"). 42 U.S.C. § 256b(a)(4)(K). To gain access to the 340B Program, Sagebrush was required to undergo a multi-step certification process to determine its Program eligibility. *Id.*

2

§ 256b(a)(7)(A). Sagebrush registered as a covered entity through the Office of Pharmacy Affairs Information System ("OPAIS")[1]. Once the registration was complete, the Office of Pharmacy Affairs ("OPA"), an agency within HRSA, reviewed the submission and "verif[ied] eligibility by conferring with the appropriate granting agency."[2] After OPA verified that Sagebrush qualified as a 318 subawardee and had provided all necessary information, OPA approved Sagebrush's status as a covered entity.[3] OPA recertified Sagebrush's covered entity status annually. *Id*. § 256b(a)(7)(E).

Sagebrush also registered each contracted site so that the sites were qualified to purchase and administer 340B drugs. Each site required OPA's review and verification of "eligibility by conferring with the appropriate granting agency."[4]

Sagebrush relies on the 340B Program to enable provision and funding for many of the Program's activities and other community benefit programs, including STI screening and treatment services that are not directly funded under the subawards.

**B. 340B Program Compliance and Oversight**

The PHSA prohibits covered entities from: (a) reselling or transferring a drug purchased through the Program to anyone other than a "patient" of the covered entity (the "diversion" prohibition), or (b) billing fee-for-service Medicaid for a 340B drug if the state Medicaid agency will request a rebate from the manufacturer (the "duplicate discount" prohibition). 42 U.S.C. § 256b. The statute further specifies the conditions under which a covered entity may be

---

[1] *See* https://www.hrsa.gov/opa/registration
[2] *See* FAQ ID: 1213 at https://www.340bpvp.com/search#tab=faq&cfp_faq_category_hierarchy=Eligibility%2FRegistration&firstResult=20.
[3] *See* https://www.hrsa.gov/opa/registration.
[4] *See* FAQ ID: 1213 at https://www.340bpvp.com/search#tab=faq&cf-p_faq_category_hierarchy=Eligibility%2FRegistration&firstResult=20.

sanctioned, the covered entity's audit appeal rights, and the provision of both notice and hearing prior to the imposition of sanctions. *See* § 256b(a)(5)(C)(D).

The procedures that HRSA established for auditing covered entities are set forth on the "Program Integrity" page of the 340B Program website.[5] The scope of an audit may include review of an OPAIS registrant's eligibility as a covered entity. Upon completion of the audit, HRSA will issue a final report addressing its findings. The report may be accompanied by a request for a corrective action plan ("CAP"). The covered entity has 30 calendar days from the date of HRSA's final report to notify the agency of its agreement or disagreement with the final report.

If the covered entity disagrees with the final report, it must provide a written notice of disagreement and supporting documents. HRSA will review the covered entity's response and may reissue the final report with changes, as it deems appropriate. At that time, HRSA will request a CAP, if still required.

If, in connection with an audit, HRSA determines that a covered entity's violation of the diversion prohibition is "systematic and egregious as well as knowing and intentional," the agency is statutorily authorized to "remov[e] the covered entity from the drug discount program . . . and disqualify[ ] the entity from re-entry into such program for a reasonable period of time . . . ." 42 U.S.C. § 256b(d)(2)(B)(v)(II). According to HRSA's Program Integrity webpage, "[a] finding of non-compliance with the diversion prohibition *in two or more audits*, depending on the nature of the violation, may be considered systematic and egregious, as well as knowing and

---

[5] *See* https://www.hrsa.gov/opa/program-integrity.

intentional" (emphasis added), and therefore may result in the covered entity's removal and disqualification from re-entry into the 340 Program.

**D. The Instant Litigation**

On February 2, 2024 Sagebrush received a letter notifying Sagebrush that HRSA was "conducting a review" of 53 actively listed sites in OPAIS for "compliance with 340B Program requirements with a focus on the site's receipt of grant funding from the Centers for Disease Control and Prevention (CDC), and determinations of patient eligibility." (Declaration of Guru Charan (Charan Decl. ¶ 5, Ex. A). The letter contained 11 inquiries and document requests for which HRSA requested responses by Saturday, March 2, 2024 (subsequently extended to Monday, March 4, 2024).

On March 4, 2024, Ms. Dybik, acting as Sagebrush's 340B Program authorizing official, responded to HRSA's requests by letter. The letter included 8,135 pages of responsive documents. (Charan Decl. ¶ 6, Ex. B).

On July 3, 2024, Sagebrush received a second letter requesting Sagebrush's response to eight questions and document requests and attached 10 documents. (Charan Decl. ¶7, Ex. C). Sagebrush responded by letter dated August 2, 2024, and attached 10 documents. (Charan Decl. ¶ 8, Ex. D).

On September 19, 2024, Sagebrush received a third letter asserting that three Sagebrush sites were not "currently eligible to participate in the 340B Program as an STD covered entity under Section 340B(a)(4)(K) of the PHSA" because the CDPH Subaward allegedly expired on July 31, 2024. (Charan Decl. ¶ 9, Ex. E). HRSA claimed that it "will terminate these sites from the 340B Program on September 27, 2024, if Sagebrush is unable to demonstrate its current eligibility, including the submission of documentation to show compliance." Sagebrush

5

responded to HRSA by letter on September 25, 2024, enclosing documentation demonstrating that the three sites at issue remained eligible to participate in the 340B Program. (Charan Decl. ¶ 10, Ex. F).

On December 20, 2024, Sagebrush received a fourth letter, stating that HRSA determined that 55 sites "have not been eligible to participate in the 340B Program as STD covered entities under Section 340B(a)(4)(K) of the PHSA." (Charan Decl. ¶ 11, Ex. G). Notwithstanding the fact that OPA had previously reviewed and approved the OPAIS registration of each of the sites and had issued individual 340B identification numbers, HRSA concluded that the sites "failed to comply with this statutory eligibility requirement and failed to provide documentation to demonstrate receipt of Section 318 funding or support . . . ." Based on this determination, HRSA demanded that Sagebrush terminate 20 sites registered in OPAIS by December 27, 2024. Should Sagebrush fail to comply, HRSA would terminate the sites by December 30, 2024. *Id*.

HRSA requested that Sagebrush "provide a statement that Sagebrush has determined the full scope of non-compliance and worked with affected manufacturers regarding repayment" within 60 days. Only after Sagebrush "is able to demonstrate that it determined the full scope of non-compliance, repaid affected manufacturers, can demonstrate that it meets the covered entity eligibility requirements set forth in Section 340B(a)(4) of the PHSA, and meets all other 340B Program requirements" would HRSA allow Sagebrush to re-register the sites. *Id*.

Sagebrush responded on the same day, emphasizing its disagreement with HRSA's determination and requesting that HRSA withdraw its demand that Sagebrush terminate the 20 Sites from the 340B Program. HRSA included documents showing the current status of the Subawards and requested that HRSA grant Sagebrush an additional 30 days to demonstrate the 340B eligibility of the Sites. (Charan Decl. ¶ 12, Ex. H).

Separately, Sagebrush's legal counsel emailed Ms. Britton on December 20, 2024, to request that HRSA extend its deadline to terminate the sites to January 31, 2025. (Charan Decl. ¶ 13, Ex. I).

Later on December 20, 2024, HRSA emailed Sagebrush and stated that HRSA would agree to "pause the date that we requested Sagebrush terminate its sites in our letter dated Dec. 20, 2024, until we have had chance to review this information." (Charan Decl. ¶ 14, Ex. J).

On January 9, 2025, Sagebrush's legal counsel sent HRSA a letter expressing concern that HRSA's findings as stated in its December 20, 2024 letter were "not in compliance with HRSA's own policies and procedures as stated in its Program Integrity Materials (the "Policy"). Thus, it was unclear if HRSA's letter "triggers the dispute resolution process as provided in the Policy," including the potential submission of a CAP for HRSA's approval. (Charan Decl. ¶ 15, Ex. K).

On January 13, 2025, at approximately 4:28 a.m., HRSA responded to the above, clarifying that the requested documents were not, in fact, part of HRSA's audit process but rather part of a separate "integrity initiative[]." HRSA further clarified that they "were close to finalizing [their] review of the additional documentation submitted…on December 20, 2024, and [would] respond to that correspondence soon." (Charan Decl. ¶ 16, Ex. L).

On January 13, 2025, HRSA notified Sagebrush that it had reviewed the additional materials that Sagebrush provided on December 20, 2024, and reiterated its determination that each of the Sites identified in HRSA's December 20, 2024, letter be terminated. HRSA cited to its (incorrect) understanding that the sites in question were not receiving the necessary grant funding to qualify for 340B. (Exhibit M). HRSA also determined that "there are a number of other deficiencies in much of the documentation, such as, not being specific to the sites being

7

terminated and not being specific to the time periods covered." The letter stated that HRSA would terminate the sites by close of business that same day, January 13, 2025. (Charan Decl. ¶ 17, Ex. M).

## LEGAL STANDARD

The primary purpose of a temporary restraining order or a preliminary injunction is to preserve the object of the controversy in its then-existing condition. *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014). That is, to preserve the *status quo ante*, *i.e.*, "the last uncontested status which preceded the pending controversy." *Dist. 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*, 412 F.2d 165, 168 (D.C. Cir. 1969). A party seeking a temporary restraining order or a preliminary injunction must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *J.D. v. Azar*, 925 F.3d 1291, 1325 (D.C. Cir. 2019) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

"The four factors have typically been evaluated on a sliding scale." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009). Under this sliding-scale framework, "i[f] the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291-92. Under the sliding-scale approach, if the movant makes a strong showing on other factors, then it must show only a "serious legal question" on the merits rather than a likelihood of success. *Sherley v. Sebelius*, 644 F.3d 388, 398 (D.C. Cir. 2011).

Ultimately, the question is whether the movant has shown that all four factors, taken together, weigh in favor of preliminary injunctive relief. *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014). For the following reasons, Sagebrush has established that it is entitled to a

temporary restraining order and/or preliminary injunction.

## ARGUMENT

    **A.    Sagebrush Is Likely to Succeed on Its APA Claims and Due Process**

Sagebrush is likely to succeed on its Administrative Procedure Act ("APA") claims because HRSA violated the statute and its own internal processes, stepped well-beyond its statutory authority, and violated due process in its decision to terminate Sagebrush's clinics without the required notice and hearing.

### 1. HRSA'S Termination of Sagebrush's Sites Is a Violation of Due Process under the Fifth Amendment

Sagebrush's participation in the 340B Program is a valuable property right protected under the Due Process Clause of the Fifth Amendment. "To have a property interest in a benefit, a person clearly must … have a legitimate claim of entitlement to it." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "A legitimate claim of entitlement to warrant a due process hearing occurs only when the statutes [or] regulations in question establish a framework of factual conditions delimiting entitlements which are capable of being explored at a due process hearing." *Fincher v. S. Bend Heritage Found.*, 606 F.3d 331, 334 (7th Cir. 2010).

After successfully completing the covered entity certification process, Sagebrush had and continues to have a "legitimate claim of entitlement" to participation. This claim of entitlement is emphasized by the fact that the PHSA enumerates the ways in which a covered entity may be sanctioned, clearly indicating that recission of participation may not occur absent proper justification. The statute further details the process by which such sanctions may be applied, including an audit, notice, and hearing. None of these required steps were followed by HRSA in its action against Sagebrush. Instead, Sagebrush received a number of letters from HRSA requesting documentation and narrative responses. Following submission of its responses and

after being told that additional documentation was under review, Sagebrush was summarily terminated from the Program in violation of the statutory processes required to implement any sanctions under the program.

Accordingly, Sagebrush is likely to prevail on the merits of its Due Process Claim.

### 2. HRSA'S Termination of Sagebrush's Sites Is Arbitrary, Capricious, and not in Accordance with Law

Under the APA, a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. On judicial review, the court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency's action is "arbitrary and capricious if the agency fails to 'comply with its own regulations.'" *Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014) (quoting *Environmental, LLC v. FCC*, 661 F.3d 80, 85 (D.C. Cir. 2011)); *Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 372 (D.D.C. 2017) ("An agency interpretation that conflicts with an unambiguous regulation is substantively invalid because to defer in such a case would allow the agency to create *de facto* a new regulation.").

In the instant case, Sagebrush was terminated from the 340B Program after a process directly contrary to that required both by statute and by HRSA's own regulations. To apply sanctions to a covered entity participating in the 340B Program, HRSA is required by statute to 1) conduct an audit; 2) provide notice; and 3) conduct a hearing. According to HRSA's own published regulations, "[a] finding of non-compliance with the diversion prohibition *in two or more audits*, depending on the nature of the violation, may be considered systematic and egregious, as well as knowing and intentional" (emphasis added), and therefore may result in the

10

covered entity's removal and disqualification from re-entry into the 340 Program. Such audits, pursuant to HRSA's own regulations, are accompanied by a detailed appeals process and hearing.

Rather than be provided a formal audit, notice, a hearing, and an appeals process, Sagebrush instead received a series of letters requesting information and documentation [which were provided], followed by a variety of confusing communication, including an email claiming that the entire process was not an audit at all, but rather an "integrity initiative." (Charan Decl. ¶ 16, Ex. L). Following this confusing trail of correspondence, Sagebrush was terminated from the program absent notice, a hearing, or an appeals process.

Accordingly, Sagebrush is likely to prevail on the merits of its APA.

### B. Sagebrush will Suffer Irreparable Harm Absent a Temporary Restraining Order

As an initial matter, economic harm caused by agency action is always irreparable "because the APA's waiver of sovereign immunity does not extend to damages claims," making them "unrecoverable." *District of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 34 (D.D.C. 2020) (citing 5 U.S.C. § 702 (allowing relief "other than money damages")); *see California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (stating economic harm caused by federal agency action "is irreparable . . . because the states will not be able to recover monetary damages"); *Clarke v. Off. of Fed. Hous. Enter. Oversight*, 355 F. Supp. 2d 56, 66 (D.D.C. 2004) (finding irreparable harm because agency was likely immune from suit and resulting losses were therefore unrecoverable).[6]

---

[6] *See also Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010) ("Imposition of monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury."); *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996) ("The threat of unrecoverable economic loss, however, does qualify as irreparable harm."); *Pennsylvania v. Trump*, 930 F.3d 543, 574 (3d Cir. 2019) ("Because the States cannot collect money damages under the APA . . . the States will suffer irreparable harm if the Rules are enforced." (cleaned

In this particular case, the economic harm to Sagebrush will be fatal. Sagebrush is a non-profit entity that utilizes the 340B Program, and the related grants, as its primary form of funding. The vast majority of that funding is then put back into the community in the form of free STI testing and other services. If Sagebrush is no longer able to access the funds via the 340B program, it will close its doors in a matter of days. Without preliminary relief, Sagebrush will not exist long enough to see the end of this litigation.

### C. The Balance of Equities and Public Interest Weighs in Sagebrush's Favor

The balance of equities and the public interest also weigh in favor of preliminary relief. Because this case is against the government, the balance of equities and public interest factors "merge into a single inquiry." Luokung Tech. Corp. v. U.S. Dep't. of Defense, 538 F. Supp. 3d 174, 194 (D.D.C. 2021) (citing Nken v. Holder, 556 U.S. 418, 435 (2009)). That is because the government's interest *is* the public interest." Pursuing Am.'s Greatness v. FEC, 831 F.3d 500, 511 (D.C. Cir. 2016) (emphasis in original) (citing Nken, 556 U.S. at 435).

Needless to say, there is a "substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.' " League of Women Voters, 838 F. 3d at 12 (quoting Washington v. Reno, 35 F.3d 1093, 1103 (6th Cir. 1994)); see id. (holding "[t]here is generally no public interest in the perpetuation of unlawful agency action."); see also N. Mariana Islands v. United States, 686 F. Supp. 2d 7, 21 (D.D.C. 2009) ("The public interest is served when administrative agencies comply with their obligations under the APA."); Luokung Tech. Corp., 538 F. Supp. 3d at 195.

In the instant case, there is negligible cost to Defendants if preliminary relief is provided.

---

up)), *rev'd on other grounds sub nom. Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020).

When balanced with the significant, likely fatal, cost to Plaintiff, any potential costs incurred by Defendants (who are merely being required to follow their own regulations) are unquestionably outweighed.

## CONCLUSION

The Court should grant Sagebrush's motion and issue a temporary restraining order and/or preliminary injunction enjoining HRSA from terminating Sagebrush and Sagebrush's Sites from the 340B program absent proper procedure as defined under statute and through HRSA's own regulations.

January 16, 2025                              **SAGEBRUSH HEALTH SERVICES**

/s/ James H. Hulme
James H. Hulme (Bar No. 323014)
Douglas A. Grimm (Bar No. 495805)
ArentFox Schiff LLP
1717 K Street, NW
Washington, DC 20006-5344
Ph: 202.857.6000
Fax: 202.857.6395
james.hulme@afslaw.com
douglas.grimm@afslaw.com
*Counsel for Plaintiff Sagebrush Health Services*