UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAGEBRUSH HEALTH SERVICES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DOROTHY FINK, Acting Secretary of Health and Human Services,[1] et al.,<br><br>　　　　　Defendants. | Civil Action No. 25-0127 (LLA) |

## DEFENDANTS' RESPONSE TO SHOW CAUSE ORDER

Dorothy Fink, in her official capacity as Acting Secretary of Health and Human Services, the Department of Health and Human Services (the "Department"), the Health Resources and Services Administration (the "Administration" or "HRSA"), and its Administrator (collectively "Defendants"), through undersigned counsel, respectfully respond to the Court's Order to Show Cause (ECF No. 13, "Order to Show Cause") in this action brought by Plaintiff Sagebrush Health Services ("Sagebrush").

## BACKGROUND

Before Sagebrush filed this suit, on January 14, 2025, the Department, through the Administration, terminated twenty Sagebrush-affiliated sites from participation in the 340B program due to Sagebrush's inability to show that the twenty sites were eligible to participate in the program. *See* Britton Decl. (enclosed herewith) ¶ 6. After the sites were terminated from the program, Plaintiff filed this action on January 16, 2025. Compl. (ECF No. 1). Plaintiff

---

[1] The current Acting Secretary is substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

contemporaneously filed a motion for temporary restraining order and preliminary injunction, seeking preliminary emergency relief from the court, purportedly to maintain the status quo. Mot. (ECF No. 2) at 2.

On January 17, 2025, this Court issued an Order (the "Administrative Stay Order") implementing a so-called "administrative stay." Admin. Stay Order (ECF No. 8). Specifically, the Court ordered an "administrative stay," whereby "[d]uring the pendency of the administrative stay, Defendants shall refrain from terminating or enforcing the termination of Sagebrush's allegedly ineligible clinics and from requiring Sagebrush to repay funds allegedly owed to drug manufacturers participating in the 340B Program." *Id*. at 3. The Court further ordered Defendants to respond to Plaintiff's request for a temporary restraining order by 5:00 P.M. on January 24, 2025. *Id*.

On January 21, 2025, Plaintiff's counsel emailed the undersigned, stating that "no sites have been reinstated—contrary to the Friday Court Order" and declaring that the "sites must be reactivated immediately." Emails, enclosed herewith as Attachment B ("Attach. B"). The undersigned counsel replied that she was unaware of any violation of the Court's Order—especially considering that the sites were terminated before the instant action was initiated and the Court's Administrative Stay Order did not compel reinstatement of those sites—but she would investigate Plaintiff's concern. *Id*. That evening, Plaintiff filed an emergency motion to enforce the administrative stay (ECF Nos. 11, "Enforce Mot.") with accompanying memorandum (ECF No. 12, "Pl. Mem.").

On January 22, 2024, the undersigned counsel responded by email to Plaintiff's counsel, stating that since the issuance of the Administrative Stay Order, Defendants have not terminated or enforced the termination of the allegedly ineligible clinics, nor have they required plaintiff to

repay funds. *See* Emails, Attach. B.  In short, Defendants have complied with the letter of the Court's Administrative Stay Order.

## DISCUSSION

### I. **Defendants Have Complied With the Court's Administrative Stay Order.**

Plaintiff contends that the Court's Administrative Stay Order "clearly required the reinstatement of Sagebrush's sites into the Federal 340B Program." Pl. Mem. (ECF No. 12) at 3. To the contrary, the Court did not order the Defendants to reinstate the ineligible entities to the program.  Indeed, no such "specific[]" "term" appears anywhere in the Administrative Stay Order. Fed. R. Civ. P. 65(d)(1)(B).  Instead, the Administrative Stay Order contained three operative directives—namely, commanding Defendants to: (1) "refrain from terminating . . . Sagebrush's allegedly ineligible clinics[;]" (2) "refrain from . . . enforcing the termination of Sagebrush's allegedly ineligible clinics[;]" and (3) "refrain . . . from requiring Sagebrush to repay funds allegedly owed to drug manufacturers participating in the 340B Program."  Admin. Stay Order (ECF No. 8) at 3.  As explained in the attached declaration and herein, Defendants have abided by these terms of the Court's Administrative Stay Order.

Insofar as Plaintiff suggests that the Court's Order required reinstatement of twenty clinics to the 340B program, the Court's Order includes no such provisions.  To the contrary, the Court's proscription on terminating Sagebrush clinics was prospective, prohibiting Defendants "from terminating" clinics "during the pendency of the administrative stay[.]"  Admin. Stay Order (ECF No. 8) at 3.  The terminations that Sagebrush suggests must be reinstated occurred outside of the pendency of the administrative stay, before Sagebrush even filed this suit.  *See supra*.  Moreover, by its terms, the Administrative Stay Order contemplated that certain of "Sagebrush's allegedly ineligible clinics" would continue to be terminated but that Defendants were proscribed from acts to enforce those terminations.  Otherwise, the portion of the Court's order restraining Defendants

from "enforcing the termination" of the clinics would make no sense. That is, if the order required Defendants to reinstate the clinics, the proscription on "enforcing the termination" of them would be clear surplusage.

In sum, as explained herein and as more fully detailed in the attached declaration, Defendants have conformed to the Order by "refrain[ing] from terminating or enforcing the termination of Sagebrush's allegedly ineligible clinics" and have not "require[ed] Sagebrush to repay funds allegedly owed to drug manufacturers participating in the 340B Program." Jan. 17, 2025 Order (ECF No. 8) at 3; *see generally* Britton Decl. The Administrative Stay Order required no more.

## II.    The Court Should Revisit Its Authority to Issue Administrative Stays.

While Defendants have honored and clearly abided by the Court's Administrative Stay Order, and thus the Court should discharge its Order to Show Cause on that basis, the United States respectfully is obliged to inform the Court of its belief that the Court lacks jurisdiction and has no authority as a district court to enter proscriptive or mandatory administrative stays effectively operating as injunctions, especially against a co-equal branch of the federal government.

The Federal Rules of Civil Procedure provide for only two forms of provisional injunctive relief: (1) preliminary injunctions, which operate to enjoin parties during the pendency of an action, and (2) temporary restraining orders, which operate to enjoin parties until the Court has the opportunity to consider a request for a preliminary injunction, and may be sought on an ex parte basis. *See* Fed. R. Civ. P. 65(a), (b); Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2941 (3d ed. June 2024 update) ("A temporary-restraining order typically is sought and issued on an ex parte basis and operates to prevent immediate irreparable injury until a hearing can be held to determine the need for a preliminary injunction. A preliminary injunction is effective until a decision has been reached at a trial on the merits."). Before either a preliminary injunction or a temporary

restraining order may issue, a movant must establish a likelihood of success on the merits and irreparable harm (among other showings). *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). Also, while a temporary restraining order cannot be immediately appealed, the issuance of a preliminary injunction can. This is because a temporary restraining order can only last for a short period of time and comes with "general principles imposing strict limitations on the scope of temporary restraining orders." *Sampson v. Murray*, 415 U.S. 61, 86–88 (1974). And courts cannot characterize provisional relief exceeding those strict limitations as a temporary restraining orders. As the Supreme Court has noted: "A district court, if it were able to shield its orders from appellate review merely by designating them as temporary restraining orders, rather than as preliminary injunctions, would have virtually unlimited authority over the parties in an injunctive proceeding." *Sampson*, 415 U.S. at 86–87; *see also In re Dist. No. 1 – Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n*, 723 F.2d 70, 74 (D.C. Cir. 1983) (deeming characterization of provisional relief as temporary restraining order "to be patently erroneous").

There is no third tool available to district courts—e.g., an "administrative stay"—that is subject to some unidentified standard short of the requirements set forth in *Winter* and which provides unknown appellate rights that permits a district court to enjoin a party (and, in particular, the Executive) before it can consider a request for a temporary restraining order (which itself is an urgent, emergency request for provisional relief until a preliminary injunction can be considered). Indeed, as its name indicates, an "administrative stay" is solely used by appellate courts to halt (or "stay") the effectiveness of judicial commands, not place binding obligations on the parties to a suit in the first instance.

The support cited by the Court in its Administrative Stay Order provides no authority for a district court to issue provisional injunctive relief without a finding of both a likelihood of success

on the merits and irreparable harm. Instead, the Supreme Court in *United States v. Texas*, 144 S. Ct. 797, 798 (2024), discussed administrative stays available to appellate courts, which are used by them to halt (or "stay") the effectiveness of an order or judgment until an appellate court can consider the merits of a stay pending appeal. *Id.* at 799 ("When entered, an administrative stay is supposed to be a short-lived prelude to the main event: a ruling on the motion for a stay pending appeal."). Nothing in that opinion suggests that a trial court can use this appellate apparatus to enjoin the Executive Branch or others without a requisite showing of a likelihood of success on the merits and irreparable harm.

The same goes for the other authorities gathered in the Court's Administrative Stay Order—they all concern the availability of administrative stays to appellate courts to halt (or "stay") the operation of a district court order. None suggests the mechanism exists at the trial court level to enjoin parties in the first instance. *See, e.g.*, Rachel Bayefsky, Administrative Stays: Power and Procedure, 97 Notre Dame L. Rev. 1941, 1941 (2022) ("This Article explores a little examined device that federal courts employ to freeze legal proceedings until they are able to rule on a party's request for a *stay pending appeal*: the 'administrative' or 'temporary' stay." (emphasis added)).

Ultimately, the Court's authority to issue an administrative stay is academic in this case because Defendants have undoubtedly complied with the Court's Administrative Stay Order. That said, district courts enjoy no inherent authority to enjoin the Executive (or other parties) without finding that a litigant has demonstrated a likelihood of success on the merits and irreparable harm, among the other factors set forth in *Winter*, and the Court here was without jurisdiction to issue its Administrative Stay Order without making those determinations.

## CONCLUSION

For these reasons, the Court should discharge its Order to Show Cause.

Dated: January 24, 2025
       Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:     */s/Kimberly A. Stratton*
     KIMBERLY A. STRATTON,
       PA Bar #327725
     Assistant United States Attorney
     601 D Street, NW
     Washington, DC 20530
     (202) 417-4216
     kimberly.stratton@usdoj.gov


*Attorneys for the United States of America*