UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAGEBRUSH HEALTH SERVICES,

                Plaintiff,

        v.

DOROTHY FINK, Acting Secretary of
Health and Human Services,[1] et al.,

                Defendants.

Civil Action No. 25-0127 (LLA)

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

---

[1]      The current Acting Secretary is substituted for her predecessor pursuant to Federal Rule of
Civil Procedure 25(d).

## TABLE OF CONTENTS

Table of Contents ...................................................................................................... i

Table of Authorities .................................................................................................. ii

Statutory Background ................................................................................................ 1

    I.    The 340B Program. ...................................................................................... 1

    II.    Sagebrush's Inability to Confirm Program Eligibility for Multiple Sites ............... 2

    III.    The Instant Civil Action ................................................................................. 5

Legal Standard .......................................................................................................... 6

Argument .................................................................................................................. 7

    I.    Plaintiff is Unlikely to Succeed on the Merits of the Underlying Complaint ......... 7

        A.    Plaintiff is Unlikely to Prevail on its APA Claim. ...................................... 7

        B.    Plaintiff is Unlikely to Succeed on its Due Process Claim. ........................ 8

    II.    Plaintiff is Unable to Demonstrate Immediate Irreparable Harm Absent Court Intervention. ............................................................................................... 10

    III.    The Balance of Equities and the Public Interest Weigh Against Injunctive Relief. ............................................................................................................... 13

Conclusion .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
  38 F. Supp. 2d 114 (D.D.C. 1999) ........................................................................ 7
*Apex, Inc. v. FDA*,
  449 F.3d 1249 (D.C. Cir. 2006) ............................................................................ 7
*Atherton v. D.C. Off. of the Mayor*,
  567 F.3d 672 (D.C. Cir. 2009) ............................................................................. 9
*Biovail Corp. v. FDA*,
  448 F. Supp. 2d 154, (D.D.C. 2006) ..................................................................... 7
*Bowen v. Am. Hosp. Ass'n*,
  476 U.S. 610 (1986) .............................................................................................. 7
*Butera v. District of Columbia*,
  235 F.3d 637 (D.C. Cir. 2001) ........................................................................... 10
*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ............................................................................. 6
*Colo. Wild Horse v. Jewell*,
  130 F. Supp. 3d 205 (D.D.C. 2015) .................................................................... 13
*Damus v. Nielsen*, Civ. A.,
  No. 18-0578 (JEB), 2018 WL 3232515 (D.D.C. July 2, 2018) ............................. 6
*Davis v. Pension Ben. Guar. Corp.*,
  571 F.3d 1288 (D.C. Cir. 2009) ........................................................................... 6
*Decatur Liquors v. District of Columbia*,
  478 F.3d 360 (D.C. Cir. 2007) ........................................................................... 10
*Doe v. District of Columbia*,
  93 F.3d 861 (D.C. Cir. 1996) ............................................................................... 9
*Elkins v. District of Columbia*,
  690 F.3d 554 (D.C. Cir. 2012) ............................................................................. 9
*Emily's List v. FEC*,
  362 F. Supp. 2d 43 (D.D.C. 2005) ...................................................................... 11
*Hospitality Staffing Sols., LLC v. Reyes*,
  736 F. Supp. 2d 192 (D.D.C. 2010) ...................................................................... 6
*Katz v. Georgetown*,
  *Uni.*, 246 F.3d 685 (D.C. Cir. 2001) .................................................................... 7
*League of Women Voters of the U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ........................................................................... 6, 14
*Lewis v. District of Columbia*,
  161 F. Supp. 3d 15 (D.D.C. 2015) ....................................................................... 9
*Marsh v. Or. Nat. Res. Council*,
  490 U.S. 360, (1989) ............................................................................................ 7
*Medina v. District of Columbia*,
  517 F. Supp. 2d 272 (D.D.C. 2007) ..................................................................... 9

*Nken v. Holder,*
556 U.S. 418 (2009)................................................................................................13
*Power Mobility Coal. v. Leavitt,*
404 F. Supp. 2d 190 (D.D.C. 2005)........................................................................11
*Privacy Info. Ctr. v. Dep't of Just.,*
15 F. Supp. 3d 32 (D.D.C. 2014)...........................................................................11
*Pursuing Am.'s Greatness v. FEC,*
831 F.3d 500 (D.C. Cir. 2016).................................................................................6
*Save Jobs USA v. Dep't of Homeland Sec.,*
105 F. Supp. 3d 108 (D.D.C. 2015)........................................................................11
*Sherley v. Sebelius,*
644 F.3d 388 (D.C. Cir. 2011).................................................................................6
*Small v. Avanti Health Sys, LLC,*
661 F.3d 1180 (9th Cir. 2011)................................................................................13
*Solomon v. Off. of the Architect of the Capitol,*
539 F. Supp. 2d 347 (D.D.C. 2008)........................................................................10
*Texas v. United States,*
86 F. Supp. 3d 591 (S.D. Tex. 2015)......................................................................14
*Toms v. Off. of the Architect of the Capitol,*
650 F. Supp. 2d 11 (D.D.C. 2009)..........................................................................10
*Tourus Records, Inc. v. DEA,*
259 F.3d 731 (D.C. Cir. 2001)..................................................................................7
*Trudeau v. FTC,*
456 F.3d 178 (D.C. Cir. 2006)..................................................................................7
*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.,*
559 F.2d 841 ...........................................................................................................11
*Weinberger v. Romero-Barcelo,*
456 U.S. 305 (1982)..........................................................................................13, 14
*Winter v. Nat. Res. Def. Council,*
555 U.S. 7 (2008)..........................................................................................6, 11, 14
*Wis. Gas Co. v. FERC,*
758 F.2d 669 (D.C. Cir. 1985)................................................................................11
*Wis. Gas,*
758 F.2d .................................................................................................................13

**Statutes**

5 U.S.C. § 702 .........................................................................................................7
5 U.S.C. § 706 .........................................................................................................7
42 U.S.C. § 247c ..............................................................................................passim
42 U.S.C. § 256b ......................................................................................................1
42 U.S.C. § 256b(a)(4)(K) ...................................................................................1, 8
42 U.S.C. § 256b(a)(5)(A) .......................................................................................2
42 U.S.C. § 256b(a)(5)(B) ...............................................................................2, 8, 9
42 U.S.C. § 256b(a)(5)(C) ...............................................................................2, 3
42 U.S.C. §§ 256b(d)(2)(B) .....................................................................................1

**Rules**

Federal Rule of Civil Procedure 25(d) ............................................................................... 1

Dorothy Fink, in her official capacity as Acting Secretary of Health and Human Services, the Department of Health and Human Services (the "Department"), the Health Resources and Services Administration (the "Administration" or "HRSA"), and its Administrator (collectively "Defendants"), through undersigned counsel, respectfully submit this opposition to the motion for temporary restraining order and preliminary injunction (ECF No. 2, "TRO Motion") filed by Plaintiff Sagebrush Health Service ("Plaintiff" or "Sagebrush").

## STATUTORY BACKGROUND

### I.     The 340B Program.

In 1992, Congress established the 340B Program, whereby certain statutorily defined healthcare providers ("covered entities") purchase certain drugs ("covered outpatient drugs") at a discount from participating drug manufacturers. 42 U.S.C. § 256b. The drugmakers participate in the program because it is a condition for their products to be reimbursable under Medicare Part B and Medicaid. The statute defines the parameters of eligible providers in section 256b(a)(4).  As relevant here, one category of eligible covered entities are those that receive "funds [under Section 318 of the Public Health Service Act, 42 U.S.C. § 247c] (relating to treatment of sexually transmitted diseases) . . . through a State or unit of local government." 42 U.S.C. § 256b(a)(4)(K). These fund recipients may participate in the 340B Program if they are verified to be eligible for the Program. 42 U.S.C. §§ 256b(d)(2)(B) (requiring the Department of Health and Human Services (the "Department") to develop procedures to verify all 340B participating covered entities and to establish an identification system for covered entity sites), 256b(a)(7) (certification requirement for specific covered entity types, including covered entities under § 256b(a)(4)(K)), 256b(a)(9) (requiring the Department to notify participating manufacturers of the identity of participating covered entities, as well as those who are no longer certified under § 256b(a)(7)).

In addition to the basic parameters of eligibility set forth in section 256b(a)(4), the statute also imposes certain obligations and restrictions on participating covered entities. First, the covered entity can only resell or otherwise transfer the discount drugs to its patients. *See* 42 U.S.C. § 256b(a)(5)(B). Second, covered entities must help ensure that drugmakers are not subject to a "duplicate discount" for covered outpatient drugs. *See* 42 U.S.C. § 256b(a)(5)(A). These are known as the prohibitions on "diversion" and "duplicate discounting," respectively.

The 340B Program is administered by the Administration, and its day-to-day operations are handled by a component called the Office of Pharmacy Affairs. The Office of Pharmacy Affairs uses its database named Office of Pharmacy Affairs Information System ("OPAIS" or the "Pharmacy Affairs System") to help track and oversee covered entities participating in the 340B Program. The statute gives the Administration and the Office of Pharmacy Affairs various tools and tasks to ensure program integrity, including that the Administration may audit covered entities to ensure compliance with the prohibitions on diversion and duplicate discounting. *See* 42 U.S.C. § 256b(a)(5)(C). If, following an audit of potential violations of the diversion and duplicate discount provisions, the Administration may, after notice and a hearing, find a covered entity liable to a drugmaker for repayment of the improper discount amounts. *See id.* § 256b(a)(5)(D).

II.    **Sagebrush's Inability to Confirm Program Eligibility for Multiple Sites.**

By letter dated February 2, 2024, the Administration informed Sagebrush that it was conducting a review of multiple Sagebrush sites for compliance with the 340B Program requirements, with a focus on grant funding by the Centers for Disease Control and Prevention ("CDC"). HRSA Letter of Feb. 2, 2024 (ECF No. 2-2 at 8–10). This letter included eleven inquiries requiring responses from Sagebrush to show Program eligibility and compliance. *See id.* Sagebrush responded to this inquiry in part on March 4, 2024. *See* Sagebrush Letter of Mar. 4, 2024 (ECF No. 2-2 at 13). From February 2 to December 20, 2024, the Administration evaluated

Sagebrush's documentation regarding grant agreements and notice of funding availability, along with documentation provided to the Administration by the CDC, Connecticut Department of Public Health, and the Nevada Department of Health and Human Services. *See* HRSA Letter of Dec. 20, 2024 (ECF No. 2-2 at 68–69). Ultimately, Sagebrush could not show that it received funding from a state or local government for multiple sites for the relevant time periods. *Id*.

Specifically, site numbers STD068107 and STD064891, located in Connecticut, never received funding under Section 318 of the Public Health Service Act, 42 U.S.C. § 247c, from the Connecticut Department of Public Health. Britton Decl. (enclosed herewith) ¶ 7. Likewise, site numbers STD890529, STD891293, and STD89509 never received funding from the Nevada Department of Health and Human Services. Britton Decl. ¶ 10.

Further, the Administration determined that after January 1, 2023, Sagebrush did not receive funding under Section 318 of the Public Health Service Act, 42 U.S.C. § 247c, from the Nevada Department of Health and Human Services for site numbers STD89027, STD890481, STD890521, STD891281, STD891285, STD891286, STD891287, STD89148, STD89149, STD891491, STD89511. Britton Decl. ¶ 9. The notice of award provided by Sagebrush in response to the Administration inquiries revealed that Sagebrush connected the aforementioned sites to award numbers SG-26044, SG26044-1, and SG26044-2. *Id*. These awards state that no portion of the grant funds can be subcontracted without prior written approval. *Id*. Sagebrush has not provided this written approval for the sites, despite multiple requests for this information.

The Administration was also able to determine that as of February 1, 2024, Sagebrush no longer received Section 318 funding (i.e., funding under 42 U.S.C. § 247c) from the Nevada Department of Health and Human Services for site numbers STD891061, STD89118, STD89123, and STD891284. Britton Decl. ¶ 8. Sagebrush documentation claimed that these sites received

funding pursuant to award SG-2024-00109. *Id*. However, this grant only listed the name and address of one Sagebrush site number, STD891132. *Id*. The grant states that no portion of the grant funds can be subcontracted without prior written approval. *Id*. Sagebrush has not provided such written approval. Further the Nevada Department of Health and Human Services confirmed that no funds were released and no amendments to add sites were executed. *Id*.

The Administration notified Sagebrush that due to Sagebrush's failure to comply with section 340B(a)(4)(K), Sagebrush was required to terminate the twenty ineligible sites' registration in the Pharmacy Affairs System or the Administration would terminate the sites' registration by December 27, 2024. HRSA Letter of Dec. 20, 2024 (ECF No. 2-2 at 69). This letter also reiterated to Sagebrush its responsibility to determine the full scope of non-compliance and repay any affected manufacturers according to the period Sagebrush sites did not receive Section 318 (42 U.S.C. § 247c) funding. *See id.* The Administration further noted that it does not endorse any specific methodology to determine the scope of 340B noncompliance, the amounts owed to any manufacturer, or any plan to repay the affected manufacturer. *See id.*

By letter dated December 20, 2024, Sagebrush expressed its disagreement with the Administration determination and claimed to attach "relevant and up-to-date documentation proving the receipt of funding for each of sites listed[.]" Sagebrush Letter of Dec. 20, 2024 (ECF No. 2-2) at 71-72. Also on December 20, 2024, legal counsel for Sagebrush emailed the Administration requesting the termination date be extended to January 31, 2025. *See* Grimm Email of Dec. 20, 2024 (ECF No. 2-2 at 74). The Administration informed Sagebrush that it would pause the termination date pending further review. *See* Britton Email of Dec. 20, 2024 (ECF No. 2-2 at 76).

Ultimately, on January 13, 2025, the Administration informed Sagebrush that, after review of the documentation Sagebrush had provided, Sagebrush had failed to demonstrate receipt of Section 318 (42 U.S.C. § 247c) funding for purposes of eligibility in the 340B program for each of the twenty sites previously identified by the Administration. *See* HRSA Letter of Jan. 13, 2025 (ECF No. 2-2 at 87). The Administration also informed Sagebrush that it confirmed with the Connecticut Department of Public Health and the Nevada Department of Health and Human Services that none of the twenty sites received required Section 318 (42 U.S.C. § 247c) funding. *See id*. On January 14, 2025, before the filing of this lawsuit, the Administration terminated the twenty sites' registration in the Pharmacy Affairs System. Britton Decl. ¶ 12.

### III.   **The Instant Civil Action.**

On January 16, 2025, after the twenty Sagebrush sites were terminated from the 340B Program, Plaintiff initiated the instant action under the Administrative Procedure Act ("APA"), alleging that the Administration decision to terminate the ineligible sites exceeded statutory authority, failed to observe procedure required by law, and was arbitrary and capricious. *See* Compl. (ECF No. 1) ¶¶ 49-68. Plaintiff also claims that the termination of ineligible sites violated the Due Process Clause of the Constitution. *Id*. ¶¶ 69-72.

Plaintiff contemporaneously filed a motion for a temporary restraining order and preliminary injunction, seeking preliminary relief from the Court purportedly to maintain the status quo. TRO Mot. (ECF No. 2) at 2. Plaintiff did not disclose to the Court that twenty sites were terminated from the program before Plaintiff initiated the instant action. *See* Pl. Br. (ECF No. 2-2) at 5-7. Accordingly, Plaintiff seeks more than the preservation of the status quo through its motion. To the contrary, Plaintiff seeks to change the status quo by obtaining Court-ordered reinstatement of its ineligible sites to the 340B Program.

For the reasons outlined below, Plaintiff is not entitled to this extraordinary relief because Plaintiff cannot show that it will suffer irreparable harm, Plaintiff is unlikely to succeed on its APA or Due Process claims, and the balance of equities and public interest do not support Plaintiff's continued participation in the 340B Program through ineligible sites.

## LEGAL STANDARD

A preliminary injunction "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)). The moving party bears the burden of persuasion and must demonstrate, "by a clear showing," that the requested relief is warranted. *Hospitality Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Damus v. Nielsen*, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515, at *4 (D.D.C. July 2, 2018) (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)). The D.C. Circuit has hinted, though not held, that *Winter*—which overturned the Ninth Circuit's "possibility of irreparable harm" standard—establishes that "likelihood of irreparable harm" and "likelihood of success" are "independent, free-standing requirement[s]." *Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011); *see also League of Women Voters*, 838 F.3d at 7 (declining to address whether "sliding scale" approach is valid after *Winter*).

**ARGUMENT**

**I.**    **Plaintiff is Unlikely to Succeed on the Merits of the Underlying Complaint.**

A plaintiff that cannot demonstrate a significant likelihood of success on the merits has no hope of obtaining a preliminary injunction. *See Trudeau v. FTC*, 456 F.3d 178, 182 n.2 (D.C. Cir. 2006); *Katz v. Georgetown Uni.*, 246 F.3d 685, 688 (D.C. Cir. 2001); *Apex, Inc. v. FDA*, 449 F.3d 1249, 1253–54 (D.C. Cir. 2006). "[A]bsent a 'substantial indication' of likelihood of success on the merits, 'there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review.'" *Biovail Corp. v. FDA*, 448 F. Supp. 2d 154, (D.D.C. 2006) (quoting *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999)). Here, Plaintiff's APA and Due process claims will fail as a matter of law.

**A.**    **Plaintiff is Unlikely to Prevail on its APA Claim.**

The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702. Under the APA, a reviewing court must set aside an agency action that is arbitrary, capricious, exceeds statutory authority, or was taken without observance of the procedure required by law. 5 U.S.C. § 706. The reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378, (1989) (internal quotations omitted). At a minimum, agencies must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001).

Sagebrush alleges it was terminated from the 340B Program "after a process directly contrary to that required both by statute and [the Defendants'] own regulations." Pl. Br. (ECF No. 2-1) at 10. Tellingly, however, Plaintiff fails to identify any regulation to support its argument.

And the portions of the statute that Plaintiff identifies are irrelevant to the termination of the twenty ineligible sites.

Plaintiff points to the section of the statute that outlines compliance, auditing, and a process for sanctioning entities that engage in diversion or duplicate discounting, set forth in 42 U.S.C. § 256b(a)(5)(B) and (a)(5)(A), respectively. *See* Pl. Br. (ECF No. 2-1) at 10; *see also* Compl. (ECF No. 1) ¶¶ 14-15. Plaintiff's sites were not terminated for diversion or duplicate discounting, however. Plaintiff's entities were terminated from the Program because Plaintiff failed to show eligibility to participate in the 340B Program as required by 42 U.S.C. § 256b(a)(4)(K).

Defendants' actions were not arbitrary or capricious but instead considered the relevant factors. The portion of the 340B statute applicable to Plaintiff's entities unquestionably requires them to "receivi[e] funds . . . through a State or unit of local government" pursuant to Section 318, 42 U.S.C. § 247c. *See id*. Defendants engaged in almost a year of back-and-forth with the Plaintiff to allow Plaintiff to show that it received the required funding for the twenty sites. Defendants also obtained information from Connecticut and Nevada healthcare agencies, which indicated that none of the twenty entities received Section 318 (42 U.S.C. § 247c) funding. By the plain terms of the statute, the twenty sites are ineligible to participate in the Program, and the Defendants carefully considered all relevant factors and provided ample time and opportunity for Sagebrush to prove eligibility before terminating these sites. In short, Plaintiff's APA claim fails on the merits.

**B.    Plaintiff is Unlikely to Succeed on its Due Process Claim.**

The Fifth Amendment provides that no person shall be "deprived of life, liberty or property, without due process of law." U.S. Const. amend. V. Plaintiff alleges that "enrollment in the 340B Program constitutes a highly valuable property right." Compl. (ECF No. 1) ¶ 70. As an initial matter, Plaintiff neither identifies whether its procedural or substantive due process rights were violated, nor does it plead sufficient facts that could give rise to an inference of a violation. *See id*.

In any event, any procedural due process claim fails. A "procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). "At a minimum, a procedural due process claim 'requires the plaintiff to identify the process that is due.'" *Medina v. District of Columbia*, 517 F. Supp. 2d 272, 281 (D.D.C. 2007) (quoting *Doe v. District of Columbia*, 93 F.3d 861, 870 (D.C. Cir. 1996)); *see also Elkins v. District of Columbia*, 690 F.3d 554, 561 (D.C. Cir. 2012) ("To state a procedural due process claim, a complaint must suggest 'what sort of process is due.'").

Here, Plaintiff fails to identify any process it was due that the Defendants failed to provide. Plaintiff identifies the audit procedure related to the diversion and duplicate discount prohibitions, 42 U.S.C. § 256b(a)(5)(B), (A). *See* Compl. (ECF No. 1) ¶¶ 14-15. However, the Sagebrush sites were not terminated from the Program for violating those statutory prohibitions, so any policy or procedure related to those provisions is irrelevant. The twenty entities at issue were terminated because they were ineligible to participate in the 340B Program at all, as Sagebrush failed to show that those entities were "receiving funds" "through" a state or local government entity consistent with § 256b(a)(4)(K). The termination came after Sagebrush was given nearly a year to provide proof of funding for the relevant entities, and after the Defendant confirmed that neither the Connecticut Department of Public Health nor the Nevada Department of Health and Human Services provided funding to those entities.

Since Sagebrush cannot identify the process it allegedly was denied, any procedural due process claim is nothing more than a bare-bone allegation that cannot meet the threshold requirement of identifying the process that is due, and thus dismissal is warranted. *Lewis v. District of Columbia*, 161 F. Supp. 3d 15, 30–31 (D.D.C. 2015) (dismissing plaintiff's due process claims

"[b]ecause [the complaint] is devoid of allegations as to the actual process purportedly denied . . . the [complaint] does not raise [plaintiff's] procedural due process claim 'above the speculative level' to the realm of plausibility.").

To the extent that Sagebrush alleges a substantive due process claim, this claim likewise is fatally flawed. "[S]ubstantive due process constrains only egregious government misconduct," *Decatur Liquors v. District of Columbia*, 478 F.3d 360, 363 (D.C. Cir. 2007). Thus, "a substantive due process violation will only occur where the government's conduct is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Toms v. Off. of the Architect of the Capitol*, 650 F. Supp. 2d 11, 25–27 (D.D.C. 2009) (quoting *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001)). Sagebrush cannot point to any egregious government conduct at all, let alone any that would shock the conscience. Defendants collected information from Sagebrush and state entities for almost a year before it terminated the ineligible sites. Sagebrush was afforded multiple opportunities to establish the basic eligibility criteria for participation in the 340B Program under § 256b(a)(4)(K), yet to date Sagebrush has not shown that it received state or local funding for the terminated sites. Moreover, allegations of perceived procedural deficiencies do not make out a substantive due process claim. *See Toms*, 650 F. Supp. 2d at 25–27 (finding that "plaintiff's perceived procedural deficiencies" did not constitute a due process violation); *Solomon v. Off. of the Architect of the Capitol*, 539 F. Supp. 2d 347, 350-51 (D.D.C. 2008) (dismissing substantive due process claim, as procedural issue did not meet "conscience-shocking" test). In sum, Plaintiff's due process claim, no matter how construed, fails.

## II. Plaintiff is Unable to Demonstrate Immediate Irreparable Harm Absent Court Intervention.

The standard for irreparable harm is particularly high in this jurisdiction. "[P]roving irreparable injury is a considerable burden, requiring proof that the movant's injury is *certain,*

*great and actual*—not theoretical—and *imminent*, creating a clear and present need for extraordinary equitable relief to prevent harm." *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (cleaned up; emphasis in original; quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)); *see also Save Jobs USA v. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112-13 (D.D.C. 2015).

Further, purely economic loss, even when large sums of money are involved, typically will not constitute irreparable injury. *See Wis. Gas*, 758 F.2d at 674 (holding that it is "well settled that economic loss does not in and of itself constitute irreparable harm"); *Emily's List v. FEC*, 362 F. Supp. 2d 43, 52 (D.D.C. 2005). Monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business. *See Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n. 2 (D.C. Cir. 1977). The movant may not rely on "bare allegations" that the business will not survive absent a preliminary injunction. *Wis. Gas Co.*, 758 F.2 at 674. Instead, the movant must provide some evidence of irreparable harm: "the movant [must] substantiate the claim that irreparable injury is likely to occur" and "provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id.* at 674 (internal quotation marks and citation omitted). This is because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

In addition, "the certain and immediate harm that a movant alleges must also be truly irreparable in the sense that it is 'beyond remediation.'" *Elec. Privacy Info. Ctr. v. Dep't of Just.* 15 F. Supp. 3d 32, 44 (D.D.C. 2014) (citation omitted). Thus, legal authority is clear that, to meet

the standard for irreparable harm, the movant must present sufficient evidence that the purported injury is certain, great, actual, imminent, and beyond remediation.

Plaintiff has not shown that it will suffer an "irreparable" injury absent a preliminary injunction. Sagebrush claims that the 340B Program is its "primary form of funding" and that if Sagebrush is no longer able to access 340B funds "it will close its doors in a matter of days." Pl. Br. (ECF No. 2-1) at 13. In terms of financial loss, the 340B Program allows eligible covered entities to purchase covered outpatient drugs at a discount. While it may harm Plaintiff that it can no longer obtain discounts for these drugs for the ineligible entities, it does not follow that the alleged financial harm is irreparable, as discounted drug purchasing is not the Plaintiff's only form of funding. This is confirmed by the fact that Plaintiff has terminated at least some sites on its own and remained solvent. *See* Health Resources & Services Administration Letter, July 3, 2024 (ECF No. 2-2) at 29 (noting that Sagebrush self-terminated three sites); *see also* Compl. (ECF No. 1) ¶ 32 ("From time to time, Sagebrush has removed from [Pharmacy Affairs System] Sites where Subaward activities have ceased."). Moreover, because the loss Plaintiff has identified is for the most part financial, it cannot support an irreparable harm finding unless Plaintiff establishes that these losses will indeed threaten the continued existence of its businesses. All that Plaintiff has offered is *ipse dixit*, and indeed Plaintiff's own self-terminations of sites strongly suggests that Plaintiff's assertions of resulting, imminent closures are overblown.

That is, the fact that Plaintiff remains operational despite the self-terminations belies any suggestion that absent an injunction Plaintiff's ability to continue operations will be immediately affected. Moreover, Plaintiff has offered only bare allegations that absent an injunction Plaintiff's entities will not survive. Plaintiff has not submitted audited financial statements or other detailed materials to demonstrate the impact the injunction would have on its viability or the dollar deficit

that allegedly would force it to close its doors in a matter of days. These "bare allegations" that absent an injunction Plaintiff will have a debilitating loss or that it will be forced to repay some yet to be identified sum to manufactures at some indefinite time in the future is insufficient to support a finding of irreparable harm. *See Wis. Gas*, 758 F.2d at 654.

Thus, it is far from certain that the site terminations will cause Plaintiff to reach a financial deficit so high that Plaintiff would be driven out of business or suffer irreparable harm during the pendency of the lawsuit.

**III.    The Balance of Equities and the Public Interest Weigh Against Injunctive Relief.**

The final two factors required for preliminary injunctive relief—a balancing of the harm to the opposing party, and the public interest—merge when the Government is the opposing party. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Colo. Wild Horse v. Jewell*, 130 F. Supp. 3d 205, 220-21 (D.D.C. 2015). Courts must "[give] particular regard [to] the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982). In this case, the balance of equities and the public interest tip strongly in favor of the Government, as "the public interest favors applying federal law correctly." *Small v. Avanti Health Sys, LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011).

Government entities and 340B Program participants—including drug manufacturers— have a significant interest in Program integrity. Manufacturers' interest is demonstrated by the fact that they sued the United States Department of Health and Human Services, alleging that the Department wrongly allowed Sagebrush sites to make 340B Program purchases without its sites

being eligible. *See AMGEN, Inc. v. Becerra*, Civ. A. No. 24-3571 (JEB) (D.D.C.).[2] State and local governments likewise have an interest in the integrity of their grant programs.

Accordingly, Plaintiffs cannot meet their burden of establishing "that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *Texas v. United States*, 86 F. Supp. 3d 591, 675 (S.D. Tex. 2015) ("If no public interest supports granting preliminary relief, such relief should ordinarily be denied, even if the public interest would not be harmed by one." (cleaned up)), *aff'd*, 809 F.3d 134 (5th Cir. 2015) ; *see also Weinberger*, 456 U.S. at 312 ("[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."). Plaintiff's claim that the Defendants failed to "abide by the federal laws that govern their existence and operations" is meritless. Pl. Br. (ECF No. 2-1) at 12 (quoting *League of Women Voters*, 838 F.3d 1). Here, the public interest weighs heavily against Plaintiff's attempt to reinstate ineligible entities to the 340B program through injunctive relief.

\*    \*    \*

---

[2]        That suit, which was filed prior to this one, remains pending.  Defendant today is filing a notice of related case in both cases and believes under the Court's Local Rules this case should be transferred to Chief Judge Boasberg.

**CONCLUSION**

For these reasons, Plaintiff's motion for a temporary restraining order and preliminary injunction should be denied.

Dated: January 24, 2025

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:      */s/Kimberly A. Stratton*
KIMBERLY A. STRATTON
P.A. Bar #327725
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 417-4216
kimberly.stratton@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAGEBRUSH HEALTH SERVICES,

      Plaintiff,

      v.

XAVIER BECERRA, Secretary of U.S.
Department of Health and Human Services et
al.,

        Defendant.

Civil Action No. 25-0127 (LLA)

**[PROPOSED] ORDER**

      UPON CONSIDERATION of Defendant's response in opposition to Plaintiff's motion for

a temporary restraining order or preliminary injunction, and the entire record herein, it is hereby

      ORDERED that Plaintiff's motion is denied.


SO ORDERED:


_____                    _____
Date                                                 LOREN L. ALIKHAN
                                                         United States District Judge